## Scarf v. Commonwealth.

(Decided October 6, 1922.)

### Appeal from Pike Circuit Court.

1. Criminal Law—New Trial—Evidence.—A prosecuting witness in a criminal charge testified on the trial of the indictment that her

testimony given before the grand jury was false and that no such crime had ever been committed within the jurisdiction of the court, and as a consequence a directed verdict of acquittal was given. At a subsequent term of the court the witness again preferred similar charges before the grand jury covering the same period of time as that included in the first indictment, but in the meantime she gave her deposition in a divorce proceeding filed by her husband and in which she testified that no such accusations ever happened. She did not prefer her charges nor make them known to any one for some six or seven years and until after she had married and her husband had left her. It was also shown that both she and her husband were on unfriendly terms with the accused. Held, that a new trial after conviction would be authorized upon the ground that the verdict was flagrantly against the evidence, there being no other convicting testimony except that of the self-impeached witness.

2. Criminal Law—Jeopardy.—It is a fundamental principle in criminal jurisprudence, and which is incorporated in our Constitution, section 13, that no one shall be twice put in jeopardy for the same offense, and jeopardy attaches in a jury trial when the jury is sworn.

3. Criminal Law—Jeopardy.—The plea of former jeopardy prevails, where allowable, whether the defendant was convictd or acquitted on the first trial, and the fact that the acquittal was due to a peremptory instruction directing it will not detract from the force of the plea.

4. Criminal Law—Jeopardy.—For the plea of former jeopardy to be effective the offenses must be legally identical, and they are so when the evidence and the instructions of the court on the first trial would have authorized the same verdict on the second trial in which the plea was interposed; therefore, where defendant was tried under an indictment charging him with incest and in which the prosecutrix, his daughter, testified that her father had never been guilty with her at any time or place, without particularizing any time or place, a verdict of acquittal will be a bar to a subsequent prosecution charging him with the same offense committed during the same time and within the same territory covered by the testimony of the witness on the first trial, though the result would be different if the evidence on the first trial had been confined to a specific time and place within the jurisdiction of the court, and the second trial was directed to a different time and place within such jurisdiction.

5. Criminal Law—Trial at Special Term—Agreement.—It is competent for parties by agreement to legally try a case at a special called term of court, though it was not mentioned in the notice or order of court calling the term (section 964 of Kentucky Statutes), and where the parties appeared and consented to and did try a case at the special term the orders, judgment and proceed-

ings therein are valid to the same extent as if the case had been included in the call.

WILLIS STATON, L. J. MAY, SIDNEY TRIVETT and ROSCOE VANOVER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 21, 1921, the grand jury of Pike county returned into court an indictment against the appellant, John Scalf, the validity and sufficiency of which is not and may not be questioned, charging him with incest with his daughter, Maud Scalf, and later in the term the court by notice duly posted called a special term of the court to be held on a named day in the following December. Later, and on the 14th day of October the indictment against appellant was set for trial during the special called term, and it was tried on the 9th day of December during that term. The prosecuting witness, Maud Scalf, who in May prior thereto had married a Mr. Brown, upon that trial testified that her testimony before the grand jury upon which it returned the indictment was absolutely false and that she was induced to prefer the charge and to so testify through the threats and promises of her husband, from whom she had separated prior to her appearance before the grand jury, because he had preferred charges of unchastity against her, and, as she stated, he agreed that if she would indict her father he would take her back and not only live with her but would provide her a comfortable home and make her happy. Her testimony at the trial of that indictment, as copied in the transcript was: "Q. Now, this indictment charges that your father, some time before you were before the grand jury, had carnal sexual intercourse with you, is that a fact? A. No, no, sir, it is not. Q. Do you mean to tell this jury that your father, the defendant, never did have sexual intercourse with you? A. That is what I said, wasn't it? Q. Do you mean to say that is what you want to say here now that he didn't? A. Yes, sir, it is, that is exactly what I want to say. Q. Why, didn't you testify to that fact before the grand jury? A. Yes, sir, I did. Q. Now you want to testify that he did not have? A. I testified before the grand jury that he did, that he was guilty, but I say that he was not now. Q. But you did testify before the grand jury that he was

guilty? A. Yes, sir, I have told you that I did. Q.
Why is it that you don't testify to the same thing now at
this time? A. My husband got me into it, he told me to
do it." She adhered to that testimony throughout her
examination upon that trial and the court as was its duty
(there being no other evidence of guilt), peremptorily
instructed the jury to acquit defendant and it
returned a verdict accordingly, upon which judgment
was duly rendered. At the following regular February
term of the court the prosecuting witness again appeared
before the grand jury and upon her testimony then given
there was returned against appellant about one dozen
similar indictments in each of which the particular place
where the alleged forbidden acts occurred was desig-
nated; and at the following May term of the court de-
fendant was put upon his trial under one of the last re-
turned indictments which charged the offense to have
been committed in Pike county "at the Ken Smith place
on Big creek." He entered a plea of "not guilty" and a
written one of former acquittal, but the court ignored the
latter plea, not even submitting it to the jury, and under
the usual instructions as to the guilt or innocence of de-
fendant he was convicted and sentenced to a term in the
penitentiary. His motion for a new trial was overruled
and he prosecutes this appeal. In the motion eight sep-
arate grounds are relied on for a reversal, some of which
are included by others, but we have determined to con-
sider only two of them, the second of which, at least, is
undoubtedly sufficient to authorize a reversal of the
judgment. They are: (1), that the verdict is unsup-
ported by the testimony and it is insufficient to authorize
the conviction, and (2), that the plea of former acquittal
was a bar to the prosecution and it should have prevailed.

Not only does the record show, by the admission of
the prosecuting witness herself, that she testified before
the grand jury in September, 1921, to the guilt of her
father and also testified in the following December, as
above stated, to his innocence and to the falsity of her
testimony before the grand jury, but it is further shown
by herself that between the latter date and the following
February term of the court she gave her deposition in
the divorce proceeding filed against her by her husband,
and at that time she testified that her father was inno-
cent of any unbecoming conduct with her. That testi-
mony was given in the state of Virginia, where she ap-
pears to have been living at that time, and when she was

not under the restraint or domination of her father which she testified influenced her testimony upon the first trial and caused her at that time to deny his guilt. It is disclosed by the record, and not questioned by any one, that the forbidden acts, if they occurred at all, happened some six or seven years before the trial of this case and when the daughter was 14 or 15 years of age, she being 22 years old at the time of the trial. She made no complaint to any one in the meantime and never divulged her father's beastly acts, if true, to any one until after her marriage and after she and her husband had separated. It furthermore appears that at the time of the commission of the alleged offense appellant's wife was dead and he was living with three or four of his children, one of whom was the prosecuting witness, but none of the others support the daughter's testimony by any fact or circumstance. Only two of them testified and they were introduced by appellant and the effect of their testimony was to sustain his plea of "not guilty."

We are fully aware of the rule that, ordinarily, the jury are the sole judges of the credibility of the witnesses, which rule prevails in criminal as well as civil causes, and that ordinarily the giving of prior testimony under oath directly contrary to that given on the trial has only a contradictory or impeaching effect rather than a nullifying or destructive effect, and that under such circumstances the court in passing on a motion for a new trial would not be authorized to wholly disregard the testimony of the witness which is under review, yet the purpose of courts is to administer justice and to try causes according to the facts, and under the circumstances of this case we would hesitate very much to allow the liberties of appellant to be taken from him upon such utterly unreliable testimony. It will be observed that the case is different from the ordinary one where the witness is impeached by proving contrary statements made by him on a former occasion, even under oath, when the witness denied having made such statements, in which case the only effect which can be given to the contradictions would be to impeach the testimony of the witness given on the trial, while in this case the contradictory statements were knowingly, wilfully and admittedly made for a corrupt purpose and upon which the Commonwealth subsequently based an indictment of the witness for false swearing, and which was pending at the time of the trial. To say the least of it a conviction under such cir-

cumstances might very properly be held as one which is flagrantly against the evidence. But, since we have determined that a reversal must be had under ground (2) above, we have concluded to not rest the opinion upon the first one.

The doctrine of former jeopardy in criminal jurisprudence is as old as the common law, and while a strict adherence to it may result in cheating justice in a few instances, yet it is universally held that it is better that an occasional guilty person escape punishment than that any innovations may be made upon the doctrine which indeed is so highly regarded as to receive constitutional sanction in almost, if not all, Anglo-Saxon jurisdictions, ours being section 13 of our Constitution, saying: "No person shall, for the same offense, be twice put in jeopardy of his life or limb." The inhibition has been construed to apply to all classes of criminal prosecutions regardless of the nature of the punishment. But for such a plea to prevail it is essential that the court on the first trial had jurisdiction of the offense as well as of the person of the defendant, and the first trial will not be a bar to the second one unless the defendant was then put in jeopardy, which we have uniformly held attached upon the swearing of the jury when the case was so tried. It is also essential to the plea that the offense on the first trial be identical in substance and legal effect with the one on the subsequent trial in which the plea was interposed, and the only difficulty experienced by the courts as appears from all the adjudicated cases and text writers, is to determine, after settling the question of jurisdiction, the legal identity of the two offenses. Many rules have been promulgated and adopted for the determination of that question in the light of the various circumstances under which it was presented, but only one of which is necessary to be considered under the facts disclosed by this record, and there is no dissent by any court, or contrariety of statement by any text writer, as to how it should be determined. It is, that "When the facts necessary to convict on the second prosecution would necessarily have convicted on the first, a final judgment on the first prosecution will be a bar to the second one." 8 R. C. L. 143; Notes to the case of Roberts v. State, 58 Am. Dec. 536; Notes to the case of State v. Rose, L. R. A. 1915A 256; Cases cited in note 21 to above quoted text; 16 Corpus Juris 265, and cases cited in note 48; Wharton's Criminal Law, vol. I, seventh

edition, section 565; Cooley's Constitutional Limitations, page 328; Chesapeake & Ohio R. R. Co. v. Commonwealth, 88 Ky. 368, and Shirley v. Commonwealth, 143 Ky. 183. The text in the cited Corpus Juris, which is supported by many cases from almost all English speaking jurisdictions, in stating the rule says: "If the evidence which is necessary to support the second indictment was admissible under the former, was related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar." The rule is not affected by the fact that the acquittal pleaded in bar was the result of a peremptory instruction by the court so directing. Corpus Juris, *supra*, 256; Commonwealth v. Adkins, 171 Ky. 299, and cases referred to therein.

The cited Shirley case involved three prosecutions for the unlawful sale of intoxicating liquors to the same person; each indictment alleged a separate month within the period of limitation for the commission of the offense (one year in that case), but upon the trial of the indictment for the sale in the latest month named in any of them the prosecuting witness was not confined to that particular month, her testimony covering the whole period of twelve months preceding the indictment, and the court instructed the jury to find the defendant guilty if it believed the sale was made at any time within the preceding twelve months. A conviction was had and the defendant upon arraignment under one of the other indictments interposed a plea of former jeopardy which the lower court denied, followed by a conviction which was reversed on appeal to this court, which held that the first conviction was a bar to prosecutions under the two other indictments. It was recognized in the opinion that each separate sale constituted a distinct offense and that if the Commonwealth had confined its testimony on the first trial to a particular time or occasion, whether alleged in the indictment or not, and the court had confined the issue to the proven time or occasion, the verdict and judgment in that case would not bar a prosecution on another indictment for a sale made within the year if at a different proven time. But, since the evidence upon the first trial covered the whole period for which a prosecution might be had, and was sufficient to authorize a conviction on the trial of the second indictment, the latter prosecution was barred by the judgment

rendered in the former one, and this is the identical question we have in this case. Upon the decisive point, being the same here involved, it was said: "But if the attorney for the Commonwealth in a prosecution under any one of the several indictments found against the same defendant for selling to the same person embraces the entire year in his questions or permits the witnesses to cover the entire year in their answers, or the instructions allow a conviction for a sale within the year, a conviction or acquittal under one indictment will be a bar to another subsequent prosecution against the same defendant for selling to the same person within the year covered by the questions and answers or the instructions in the former prosecution."

The opinion in the case of McCreary v. Commonwealth, 163 Ky. 206, announces no contrary doctrine; the question there involved was the effect of the admission of testimony of other similar acts to the one for which the defendant was indicted and which were committed prior to the finding of the indictment. There was an election in that case of the Commonwealth of the particular act for which defendant was tried and the instruction of the court confined the issue to that act alone, the commission of other acts being admitted only for the purpose of corroboration, and it was held that a conviction or an acquittal of the charge based on the elected act would not bar a subsequent prosecution based upon any of the corroborating acts. We have no such particularizing upon the trial of the prosecution pleaded in bar in this case, which fact materially differentiates the two cases.

On the trial in December, 1921, of the indictment found at the prior September term of the Pike circuit court, the prosecuting witness testified, as hereinbefore shown, that her father "never did have sexual intercourse with her," which covers *all* prior time and *everywhere*, included in which broad term is Pike county. And when the verdict of acquittal was returned in that prosecution it had the effect of exonerating defendant of all charges of the same nature occurring in Pike county before the finding of that indictment. The case comes squarely within the universally applied rule as shown by the authorities, *supra*.

But, it is stated in brief of counsel for the defendant (which, however, is neither referred to nor discussed in brief for the Commonwealth), that the court denied the plea of former jeopardy upon the ground that the trial

of the first indictment at the special December term of the court was void because that prosecution was not named in the notice calling that special term. It was, however, set for trial by an order of court for the special term after it was called, and both the Commonwealth and the defendant appeared and entered into the trial with the above stated result. We think the opinion in the case of Graham v. Commonwealth, 164 Ky. 317, sufficient to refute the suggestion upon which it is claimed the trial court acted in rejecting the plea; but whether so or not, section 964 of the statutes, which authorizes the calling of special terms of circuit courts and directs the mode and method of doing so, says: "And no other case shall be tried, or motion, order or judgment entered therein (the called special term), *unless by agreement of parties.*" Surely, when the parties to this prosecution appeared at the special term and without objection entered into the trial of it they agreed that it might be tried at that term, and under the very express terms of the statute it was lawful to do so, even if it should be held that a trial under the circumstances without such agreement would be void, but which question is not determined, either the one way or the other, since the agreement to try at the special term renders it unnecessary to do so.

There can be no doubt of the efficacy of the plea of former acquittal interposed by defendant and because the court declined to sustain it the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.